WARDLAW, Circuit Judge,
concurring in part and dissenting in part:
I join Parts II, III, and VI of the majority opinion. The Arizona Supreme Court’s Eddings error requires us to grant the writ with respect to Hedlund’s sentence. See 28 U.S.C. § 2254(d). I have previously explained my disagreement with the majority’s disposition of Hedlund’s claims of unconstitutional shacMing during trial and ineffective assistance of counsel during the plea process and penalty phase. Hed-lund v. Ryan, 750 F.3d 793, 831-43 (9th Cir.2014) (Wardlaw, J., concurring in part and dissenting in part). I see no need to do so again here.
The majority opinion correctly concludes that the Arizona state courts violated Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), in their treatment of Hedlund’s mitigating evidence. They “did precisely what Eddings prohibits: they found mitigating evidence of Hedlund’s abusive childhood as a matter of fact, but treated it as non-mitigating as a matter of law because it lacked a causal connection to the crime.” Hedlund, 750 F.3d at 826 (Wardlaw, J., concurring in part and dissenting in part).
It is unfortunate that Judge Bea believes it is “more difficult to find a true Eddings violation” in Hedlund’s case than in his half-brother McKinney’s. Op. at 1262 (Bea, J., concurring). Judge N.R. Smith, in his majority opinion, aptly and accurately describes how the Arizona Supreme Court “intertwined its analysis for both Hedlund and McKinney” in its unconstitutional application of the causal nexus test. Op. at 1259-60; see id. at 1259-61. Judge Bea minimizes the import of this violation of Hedlund’s constitutional rights. Judge Bea characterizes this as a ease in which McKinney forces us unfairly to disregard the findings of the sentencing court, which he concludes the Arizona Supreme Court most likely considered. Op. at 1264 (Bea, *1266 J., concurring). He contends the sentencing court, for its part, “plainly did not commit Eddings error.” Id. at 1261-62. He is wrong.
The sentencing court’s analysis of Hed-lund’s mitigating evidence was thoroughly, and fatally, infected with Eddings error. Before it imposed a sentence of death, the sentencing court stated:
I have also considered all of the other mitigating factors which were set forth in three separate pleadings submitted by defense counsel in this case. I have reviewed all of them again as recently as yesterday and some of those factors this morning. The Court, after carefully considering and weighing all of the ag- , gravating or mitigating factors presented in this case, and not limited to the personality traits discussed by Dr. Holler, past drug and alcohol use discussed about [sic] Dr. Shaw, Dr. Holler and the other witnesses who testified, and the child abuse which the Court finds is a fact, that none of those mitigating factors considered separately or cumulatively indicates to the Court that these factors affected the defendant’s ability to control his physical behavior at the time of the offense or to appreciate the wrongfulness of his conduct, that the defendant was aware at all times while these offenses were occurring that what he was doing was wrong, that he continued to participate in them and that he had the intelligence and the ability to refuse continued participation.
Sentencing Hr’g Tr. at 23-24, July 30, 1993 (emphasis added). Thus, the sentencing court required a nexus between Hedlund’s horrifically abusive childhood and his crime before it would consider Hedlund’s evidence in mitigation. The sentencing court gave no indication that this requirement went merely to the weight of this evidence rather than its relevance. “This refusal to consider and give effect to significant mitigating evidence that the court found credible because it was not tied to [Hedlund’s] behavior in committing the crime is contrary to Eddings.” Hedlund, 750 F.3d at 829 (Wardlaw, J., concurring in part and dissenting in part).
The Arizona Supreme Court, in turn, plainly and improperly applied a causal nexus requirement to its own consideration of Hedlund’s tormented childhood. In so doing, that Court directly relied upon its analysis in State v. Ross, 180 Ariz. 598, 886 P.2d 1354 (1994). See State v. McKinney, 185 Ariz. 567, 917 P.2d 1214, 1227 (1996). Ross held unambiguously that a “difficult family background is not a relevant mitigating circumstance unless a defendant can show that something in that background had an effect or impact on his behavior that was beyond the defendant’s control.” 886 P.2d at 1363 (citation and internal quotation marks omitted) (emphasis added). The Ross Court then flatly rejected mitigating evidence of Ross’s abusive childhood. Id. As the majority opinion observes, when the Arizona Supreme Court deemed Hedlund’s mitigation evidence irrelevant and affirmed his sentence of death, it recited the unconstitutional causal nexus test and gave a pin citation to the precise page in Ross where it had previously articulated that test — just as it did when it affirmed the death sentence of Hedlund’s half-brother and co-defendant, McKinney. Op. at 1260.
Judge Bea’s concurrence resurrects from his McKinney dissent the conclusion that “our analysis of the Eddings issue was wrong and conflicts with Supreme Court precedent requiring us to ‘presum[e] that state courts know and follow the law.’ ” Op. at 1262 (Bea, J., concurring) (quoting Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002)). As Judge Bea refrains from “rehashing] that dissent,” id. at 1262, I will not rehash the McKinney en banc panel *1267 majority’s decisive refutation of it. Suffice it here to say that the presumption that state courts know and follow the law is not irrebuttable, and the Arizona Supreme Court thoroughly rebutted this presumption in Hedlund’s case, as in others. McKinney v. Ryan, No. 09-99018, 813 F.3d 798, 803-04, 2015 WL 9466506, at *2 (9th Cir. Dec. 29, 2015) (en banc). As our McKinney en banc opinion exhaustively documents, the Arizona Supreme Court consistently applied the unconstitutional causal nexus test during the fifteen-year period it was in effect. Id. at 813-18, 819-22, 824-27, *12-16, *18-20, *23-25. And it did so here.
In Hedlund’s case, as in McKinney’s, the Arizona Supreme Court’s decision was “contrary to clearly established federal law as established in Eddings.” Id. at 818-19, *17; see id. at 827-28, *26. In Hedlund’s case, as in McKinney’s, the Arizona Supreme Court’s error went deeper than the way it structured its opinion or cited authority. Like the sentencing court, the Arizona Supreme Court completely disregarded important mitigating evidence, and violated Hedlund’s Eighth and Fourteenth Amendment rights by depriving him of a properly informed, individualized determination before he was punished with a sentence of death. See id. at 812, *11, 823-24, *22 (citing Eddings, 455 U.S. at 113-15, 102 S.Ct. 869; Woodson v. North Carolina, 428 U.S. 280, 304, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976)). Because the Arizona courts “applied the prohibited causal nexus test, Hedlund has not yet received the constitutionally-required review that he is due.” Hedlund, 750 F.3d at 827 (Ward-law, J., concurring in part and dissenting in part). We must, and should, grant the writ with respect to Hedlund’s death sentence.